**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Travis Eugene MANAHAN,**
**Sr., Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 23, 2012.
Filed Feb. 29, 2012.

Ian M. Brink, Chambersburg, for appellant.

Gerard N. Mangieri, Assistant District Attorney, Chambersburg, for Commonwealth, appellee.

BEFORE: BOWES, LAZARUS, and COLVILLE,* JJ.

OPINION BY BOWES, J.:

Travis Eugene Manahan, Sr., appeals from the judgment of sentence of two to four years incarceration imposed by the trial court after he was convicted of delivery of marijuana. We affirm.

The salient facts are as follows. A confidential informant ("CI") informed the Franklin County Drug Task Force that he could purchase marijuana from Appellant. A controlled buy was arranged and the Drug Task Force supplied the CI with prerecorded money. Thereafter, the CI purchased twenty dollars of marijuana from Appellant at 11 East Main Street, Waynesboro, Pennsylvania, and the Drug

Task Force arrested Appellant. The prerecorded money and additional marijuana were in Appellant's possession. Following a jury trial, Appellant was convicted of delivery of marijuana. The Commonwealth notified Appellant that it would be seeking the school zone drug mandatory sentence under 18 Pa.C.S. § 6317.[1] The court scheduled a proceeding to hear evidence whether the mandatory sentence applied. At that hearing, the Commonwealth presented the testimony of a detective who observed Appellant's interaction with the CI, the school principal of the school in question, and Kevin Grubb, the head of the Waynesboro engineering services. As part of his job responsibility, Mr. Grubb mapped the borough.

The detective testified as to the exact location where Appellant and the CI met. The principal provided that her school was a Catholic elementary school in operation at the time of the drug transaction. Mr.

* Retired Senior Judge assigned to the Superior Court.

1. **§ 6317. Drug-free school zones**

(a) **General rule.**—A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of at least two years of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:

(1) subject to this section; and

(2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for

a maximum term of imprisonment of less than four years.

If the sentencing court finds that the delivery or possession with intent to deliver was to an individual under 18 years of age, then this section shall not be applicable and the offense shall be subject to section 6314 (relating to sentencing and penalties for trafficking drugs to minors).

(b) **Proof at sentencing.**—The provisions of this section shall not be an element of the crime. Notice of the applicability of this section to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider evidence presented at trial, shall afford the Commonwealth and the defendant an opportunity to present necessary additional evidence and shall determine by a preponderance of the evidence if this section is applicable.

18 Pa.C.S. § 6317 (footnote omitted).

Grubb stated that he used an electronic distance measuring device ("EDM") to measure from the rear of 11 East Main Street to inside the rear parking lot of the school. In testifying, he indicated that the EDM was calibrated, which occurs annually, and that he operated EDM's for twenty-one years. Mr. Grubb provided that the EDM has a margin of error of 2.37 feet when measuring for 1,000 feet. He measured the distance with the EDM three separate times. The distance for the first measurement was 951.3 feet and 951.7 feet for both the second and third measurements. Mr. Grubb testified that he heard the testimony of the detective as to where the precise location of the transaction occurred and that it was within 1,000 feet of the school. In rendering his opinion, Mr. Grubb also relied on a copy of the official map of Waynesboro Borough, which he created and had revised himself. Mr. Grubb used the map to demonstrate the 1,000–foot radius around the school. Based on the center point of that radius, he testified that the drug delivery could only have transpired within 1,000 feet of the school and that the entire property at 11 East Main Street was within 1,000 feet of the school. The Commonwealth did not introduce the map as evidence.

Based on the testimony received, the trial court held that the Commonwealth proved by a preponderance of the evidence that Appellant delivered the drugs within 1,000 feet of a school zone. Accordingly, the court imposed the applicable mandatory sentence. Appellant appealed and the trial court directed that he file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Pa.R.A.P. 1925(a) opinion. The matter is now ready for our review. Appellant's sole contention on appeal is "[w]hether the

trial court erred in imposing a mandatory minimum sentence of two years to four years imprisonment given that the Commonwealth failed to provide sufficient evidence to prove by a preponderance of the evidence that Defendant's unlawful delivery of marijuana occurred within one thousand feet of a school pursuant to 18 Pa. C.S.A. § 6317?" Appellant's brief at 7.

Appellant's issue is framed as a sufficiency of the evidence claim relative to the trial court's imposition of a mandatory minimum sentence. He contends that because he is challenging the application of a mandatory sentence, his issue pertains to the legality of his sentence. This Court previously has held that claims regarding the imposition of a mandatory minimum are legality-of-sentence questions. *Commonwealth v. Marion,* 981 A.2d 230 (Pa.Super.2009); *Commonwealth v. Foster,* 960 A.2d 160 (Pa.Super.2008), *affirmed,* 609 Pa. 502, 17 A.3d 332 (2011) (plurality). Nevertheless, the framing of the issue implicates our standard of review. We have found scant case law discussing the appropriate standard and scope of review with regard to the interplay between a sufficiency of the evidence challenge to the imposition of a mandatory minimum sentence.

Typically, sufficiency claims require us to view evidence in a light most favorable to the prevailing party at the trial level. *Commonwealth v. Johnson,* 26 A.3d 1078, 1094 (Pa.2011); *Commonwealth v. Morgan,* 16 A.3d 1165 (Pa.Super.2011) (discussing sufficiency of SVP finding). In contrast, a legality of sentencing issue is a question of law analyzed under a *de novo* standard. *Marion, supra; Commonwealth v. Gutierrez,* 969 A.2d 584 (Pa.Super.2009).[2] It is evident that Appellant's

---

**2.** This Court also has stated that our standard

of review in legality of sentence questions is

claim herein implicates a mixed question of fact and law.

Our Supreme Court has explained in the context of the PCRA setting that when examining a mixed question of law and fact, the level of deference afforded to the court is analyzed on an issue-by-issue basis. *Commonwealth v. Martin*, 607 Pa. 165, 5 A.3d 177, 197 (2010). As this Court has reasoned, "Where the legal issues predominate in mixed questions of law and fact, [appellate courts] review the question de novo. However, where the analysis is primarily a factual one, the trial court's findings of fact are binding upon a reviewing court, unless those findings were clearly erroneous." *Commonwealth v. Santiago*, 439 Pa.Super. 447, 654 A.2d 1062, 1072 (1994) (brackets in original) (internal citations and quotations omitted). Simply put, "The more fact intensive the determination, the more deference a reviewing court should afford that conclusion." *Martin*, *supra* at 197.

■ In *Commonwealth v. Myers*, 554 Pa. 569, 722 A.2d 649 (1998), our Supreme Court in analyzing the application of a mandatory sentencing statute and the appropriate standard of review, held that when reviewing factual findings and credibility determinations by a sentencing court, we accept the findings of fact unless they are clearly erroneous. *Id.* at 652. Instantly, the threshold question before this Court is whether there was sufficient evidence to establish that Appellant delivered the drugs in question within 1,000 feet of a school zone. This inquiry is fact-based. Thus, we review the evidence in a light most favorable to the Commonwealth, since it was the successful party below. Further, any factual findings by the sentencing court are binding unless clearly erroneous. *See Myers, supra.* Our scope of review is plenary. *See In re Condemnation by Urban Redevelopment Authority of Pittsburgh*, 590 Pa. 431, 913 A.2d 178, 183 (2006).

Appellant argues that the EDM was not reliable as Mr. Grubbs did not provide documentation to support his testimony that the device was calibrated annually. According to Appellant, documentary proof of calibration is necessary for radar and breath test machines to ensure reliability and is therefore required before a court may rely on an EDM measurement. In addition, Appellant contends that the court improperly relied on an unofficial Waynesboro Borough map since the Commonwealth did not move the map into evidence.

The Commonwealth first counters that Appellant did not object to "the measurements derived from the EDM" and therefore his position is waived. Second, the Commonwealth submits that there is no mandate that it provide documentary proof of the EDM's calibration. Unlike radar and breath test machines, which are statutorily required to be calibrated, the Commonwealth highlights that there is no such similar requirement for an EDM. The Commonwealth also points out that instru-

---

plenary. *See Commonwealth v. Main*, 6 A.3d 1026 (Pa.Super.2010). The term plenary is defined as: "Full; complete; entire[.]" Black's Law Dictionary, 1175 (7th Ed.1999). In contrast, the term *de novo* means to review "anew" and in the context of judicial review is non-deferential review. *Id.* at 447. The two terms are frequently used interchangeably in describing both the standard of review and scope of review. However, in light of the distinctions between the two concepts, *see Summers v. Certainteed Corp.*, 606 Pa. 294, 997 A.2d 1152, 1160 n. 11 (2010), the standard of review being the manner in which the court examines the issue and the scope of review being what the court analyzes, the most appropriate term for our standard of review in pure legality of sentencing cases is *de novo*.

ments that must be calibrated are utilized as evidence of guilt, which is not the case herein. With respect to the unofficial map, the Commonwealth asserts that the map was demonstrative evidence that was properly authenticated and relevant. As Appellant has not challenged the authentication or relevance of the map, the Commonwealth's position is largely unhelpful in this regard.

 Initially, we find that Appellant's issue regarding calibration is not waived because he specifically questioned Mr. Grubb during the sentencing hearing about the calibration issue. Nonetheless, we agree with the Commonwealth that it was not required to provide documentary evidence of calibration relative to the EDM device. Appellant has not cited any relevant authority for his position to the contrary and failed to cite case law discussing calibration requirements for radar and breath test devices.[3] We conclude that, absent a legislative requirement, the lack of documentary evidence of calibration of an EDM goes to the weight of the evidence. *See Commonwealth v. Sesler,* 358 Pa.Super. 582, 518 A.2d 292 (1986) and *compare Commonwealth v. Mabrey,* 406 Pa.Super. 437, 594 A.2d 700, 702–703 (1991). Since Mr. Grubb testified that the device was calibrated and he had extensive experience utilizing the device, the court was free to accept his testimony.

 In relation to the map, we agree that the court could not rely on the map for its finding as it was not introduced into evidence. *See Commonwealth v. Allshouse,* 969 A.2d 1236, 1241 (Pa.Super.2009) ("Reliance on documents not admitted into evidence is error."). However, the court could base its decision on the testimony of Mr. Grubb that derived from his use of that map and the EDM. The trial court in its opinion referenced Mr. Grubb's testimony that the school and the location of the drug delivery were within 1,000 feet. Moreover, the court held that the EDM was reliable and Mr. Grubb's testimony in that respect was credible. Accordingly, Mr. Grubb's testimony about the EDM measurements alone was sufficient to establish by a preponderance of the evidence that the drug delivery occurred within 1,000 feet of a school zone.

Judgment of sentence affirmed.

---

3. Appellant's entire argument section of his brief is bereft of citation to case law. *See* Appellant's brief at 11–14.